Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/18/2025 08:06 AM CDT

State of Nebraska, appellee, v.
Nimrod Torres Aquino, appellant.

___ N.W.3d ___

Filed April 18, 2025.    No. S-23-596.

1. **Criminal Law: Pretrial Procedure: Appeal and Error.** Discovery in a criminal case is generally controlled by either a statute or court rule. Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.

2. **Criminal Law: Pretrial Procedure: Evidence: Appeal and Error.** The exclusion of evidence in a criminal case as a sanction for a discovery violation is subject to harmless error review.

3. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

4. **Rules of Evidence: Proof: Appeal and Error.** Neb. Rev. Stat. § 27-103 (Reissue 2016) did not change the rule that where evidence is excluded, an offer of proof is generally a prerequisite to review on appeal.

5. **Evidence: Proof: Appeal and Error.** An offer of proof brings the substance of the evidence before the trial court and the appellate court so that both may determine whether the refusal to accept the evidence was error.

6. **Trial: Records: Pretrial Procedure: Evidence: Appeal and Error.** An aggrieved party must ensure that the trial record is sufficient for an appellate court to review whether the trial court committed reversible error in imposing a sanction for a discovery violation, whether the chosen sanction was an abuse of discretion, and whether the exclusion of the evidence was harmless.

7. **Trial: Pretrial Procedure: Evidence: Proof: Appeal and Error.** The rules governing the need to renew an offer of proof at trial to preserve error relating to preliminary evidentiary rulings on admissibility do not apply to evidence barred or stricken as a sanction for a discovery violation.

8. **Sexual Assault: Minors: Time.** The exact date of commission is not a substantive element of first degree or third degree sexual assault of a child.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. The statutes governing sexual assault of children recognize and accommodate the unique circumstances surrounding young victims, who are often unsure of the date on which an assault or assaults occurred and may have no meaningful reference point of time or detail by which to distinguish one specific act from another.

10. **Criminal Law: Appeal and Error.** Errors, other than structural errors, which occur within the trial and sentencing process, are subject to harmless error review.

11. \_\_\_\_: \_\_\_\_. Harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result.

12. **Criminal Law: Trial: Evidence: Appeal and Error.** An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt.

13. **Appeal and Error.** When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, materially influenced the outcome of the case.

14. **Verdicts: Juries: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

15. **Appeal and Error.** Whether error is harmless in a particular case depends upon a host of factors.

16. **Witnesses: Testimony: Appeal and Error.** Whether the exclusion of witness testimony is harmless depends upon the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case.

17. **Convictions: Evidence: Appeal and Error.** Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.

18. **Evidence: Witnesses.** If a witness is questioned about a prior inconsistent statement and admits to making it, then counsel is precluded from introducing extrinsic evidence of the statement itself.

19. **Effectiveness of Counsel: Records: Appeal and Error.** The record on appeal is sufficient to adequately review the question on ineffective assistance if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

20. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and prejudice.

21. ____: ____. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

Petition for further review from the Court of Appeals, Pirtle, Chief Judge, and Arterburn and Welch, Judges, on appeal thereto from the District Court for Hall County, Patrick M. Lee, Judge. Judgment of Court of Appeals affirmed.

Jerrod Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Freudenberg, J.

## I. INTRODUCTION

We granted further review of the Nebraska Court of Appeals' decision affirming the defendant's convictions of first and third degree sexual assault of his stepdaughter in Grand Island, Hall County, Nebraska. At issue is the trial court's order of a discovery sanction barring evidence and quashing the defendant's subpoena duces tecum that was filed on the Friday before trial was to commence the following Monday. The barred evidence concerned an asserted prior inconsistent

statement by the victim as to the date of a relevant assault. The defendant argues on appeal that the trial court erred in finding a discovery violation, because the information was not subject to the reciprocal discovery order. Alternatively, the defendant argues trial counsel was ineffective by violating the reciprocal discovery order and failing to follow proper procedures for privileged medical records, which the court also cited as a reason for barring the evidence at trial. The defendant assigns on further review that the Court of Appeals erroneously held that any error in ordering the discovery sanction was waived because trial counsel did not renew, at trial, his offer of proof that was made at the pretrial hearing. He also assigns that the Court of Appeals erroneously found that he was not prejudiced by the alleged ineffective assistance that resulted in the discovery sanction, because the trial court's order did not foreclose all trial counsel's avenues of presenting the prior inconsistent statement, nor did it prevent trial counsel from making an offer of proof at trial; and these failures by trial counsel were not specifically assigned as error on appeal. For different reasons than given by the Court of Appeals, we affirm.

## II. BACKGROUND

### 1. Charges

Nimrod Torres Aquino (Aquino) was charged with one count of sexual assault of a child in the first degree and one count of sexual assault of a child in the third degree. On the charge of first degree sexual assault, the operative information alleged that "[o]n or between" December 1, 2021, and February 24, 2022, Aquino, who was over the age of 25, subjected the victim, who was between 12 and 16 years of age, to sexual penetration. On the charge of third degree sexual assault, the information alleged that on or between December 1, 2021, and February 24, 2022, Aquino, who was over the age of 19, subjected the victim, who was 14 years of age or younger, to sexual contact. The original information set forth the date range for both charges as February 1, 2022, through February

24, 2022. This was amended to conform to the evidence at trial after the State rested its case in chief.

It is not disputed that the victim, T.G.T., was 14 years old or younger at the time of the alleged assaults and that Aquino was over the age of 25. T.G.T. was born in Puerto Rico in October 2007 and was 15 years old at the time of trial. Aquino was born in July 1982.

## 2. Evidence at Trial

### (a) Places of Residence, Employment, and Aquino's Access to T.G.T.

Aquino began living with T.G.T. and T.G.T.'s mother and younger brother in November 2018 in Puerto Rico. Aquino and T.G.T.'s mother married in April 2019. Aquino moved to the United States in October 2020. The mother followed a month later. By January 2021, T.G.T. and her brother were living in California with their mother and Aquino in a hotel. Thereafter, the family relocated to Idaho, North Carolina, Utah, back to California, to Washington, back to Idaho, and then back to California. They mostly stayed in hotels paid for by the employer of Aquino and the mother. Sometimes the family stayed with friends or relatives. Other than when the children lived with relatives in North Carolina for approximately 4 months, they either went to school online or did not attend school. Both Aquino and T.G.T.'s mother worked "third shift."

According to the mother, in December 2021, the family moved to Grand Island. The mother testified that the family stayed one night in a hotel in Grand Island on December 1 and moved into a two-bedroom rental home the following day, December 2. She testified that the company she worked for had paid for them to stay at the hotel from December 1 through 8.

According to T.G.T.'s testimony on direct examination, the family moved to Grand Island in September 2021. T.G.T. testified that the family stayed at the hotel for approximately

2 weeks. Later, she testified it was "[j]ust a couple of days." On cross-examination, T.G.T. agreed with defense counsel's statement that they arrived in Nebraska on December 1, 2021. No other evidence was submitted regarding the date of the family's arrival in Grand Island.

The mother testified that during the singular night in the hotel in Grand Island, she was with Aquino and the children the entire time. According to the mother, Aquino went to California on either December 2 or 3, 2021, to retrieve a vehicle and some belongings. Aquino returned to Grand Island between December 6 and 10. On December 10, she and Aquino began employment with the same employer in Grand Island.

T.G.T. testified that Aquino did not go back to California after they moved to Grand Island. She could not remember any time Aquino was not with them. She acknowledged, however, that the vehicle and the things the family had stored in California were, by the time of trial, in Grand Island.

The mother testified that she and Aquino worked the same shifts for the same employer for about 5 weeks in Grand Island, from December 10, 2021, to January 14, 2022. They both lost that employment and subsequently obtained jobs with different employers. The mother testified this occurred about 2 weeks before Aquino's arrest on February 24, which would be approximately February 10. At another point, however, the mother indicated they lost their employment a month before, which would be approximately January 27.

The mother testified that until she and Aquino lost their first jobs in Grand Island, they always worked the same shifts, even in Puerto Rico. Furthermore, she was generally with Aquino when he was not working. The mother indicated that from the time the children came to the United States until February 2022, if the children were ever alone with Aquino, it "would have been a maximum of maybe five minutes." After beginning his new job in February 2022, Aquino worked a different shift than T.G.T.'s mother. Aquino picked the

children up after school from their bus stop while the mother was still at work.

### (b) Report of Abuse to Boyfriend in Grand Island

T.G.T. testified that she did not have any friends before moving to Grand Island. She spent most of her time in hotel rooms caring for her brother. When she went to school in North Carolina, she was not allowed to spend time with fellow students outside of school hours.

In Grand Island, T.G.T. and her brother were enrolled in school and attended in person. T.G.T. was in seventh grade. T.G.T. developed a girlfriend-boyfriend relationship with a fellow student who was also in seventh grade. She "felt close to him, but not in a sexual way." She testified, "He was the only person I considered a friend after two years." T.G.T. was still not allowed to spend time with classmates outside of school hours. She was not permitted to use social media, but she had her own phone, which she used to message her boyfriend.

Sometime around February 24, 2022, T.G.T. reported to the boyfriend that she was being "violated" at home. T.G.T.'s first language is Spanish. It was established at trial that "violated" is a cognate of the Spanish word "violacion," which can mean rape. T.G.T. explained that she told the boyfriend that "[m]y stepfather was raping me."

The boyfriend testified that on February 24, 2022, he reported what T.G.T. told him to a school educator. The educator informed a school counselor that same day, who called the "Child Abuse Hotline." T.G.T. was taken to a child advocacy center, where she was interviewed by Officer Timothy Champion.

### (c) Sexual Assaults Before Moving to Grand Island

T.G.T. testified that Aquino had been "taking advantage" of her since they lived in Puerto Rico and she was 11 years old. Aquino told her not to tell anyone about the sexual assaults and that "he could hurt my mother or me and my little brother."

Also, she did not think her mother would believe her. T.G.T. explained that even in Puerto Rico, Aquino told her mother that T.G.T. was doing "incorrect things" with boys. In the United States, Aquino told her mother that "he suspected that I would have sex with . . . boys in the hotels." As a result, the mother subjected T.G.T. to two pregnancy tests.

Throughout her testimony, T.G.T. distinguished between "rape," which she defined as "nonconsensual sex," and manual stimulation of Aquino's penis, which she called "masturbating" him. She referred to giving Aquino fellatio as a form of masturbating him with her mouth. T.G.T. testified that the sexual assaults began with Aquino making her masturbate him with her hand. Aquino asked T.G.T. to "help him," because his penis "hurt." "He told me that I had to masturbate him so that he didn't have pain anymore." Aquino demonstrated how to touch his penis, and T.G.T. followed his instructions. When Aquino had determined she "was already very good at doing it with my hands," he "told [her] there was a different way to do it[,] with [her] mouth." Aquino showed T.G.T. a pornographic video so she could learn.

T.G.T. testified that the assaults involving masturbation with T.G.T.'s hands or mouth were "[a]lways in the bathroom" when T.G.T. was taking a shower. More specifically, the assaults occurred when T.G.T. washed her hair. T.G.T. explained that when she washes her hair, she spends more time in the shower.

T.G.T.'s mother was not home when the assaults happened. Her younger brother was usually home. T.G.T. explained that Aquino would give her brother his phone to play games or watch videos on. Her brother never witnessed any of the assaults.

At trial, T.G.T. described three occasions where Aquino raped her, which she described as penetrating her vagina with his penis. T.G.T. testified that the first time was when they were living in North Carolina at a relative's house. The second time was in a hotel in California, again in a bedroom. Her mother and brother were not there.

(d) Sexual Assaults in Grand Island

T.G.T. testified the third time Aquino raped her, which was the last time, was in a bathroom at their house in Grand Island as she was taking a shower, the day before she told her boyfriend about what Aquino had been doing to her. On cross-examination, she confirmed this was on approximately February 22, 2022.

T.G.T. testified at trial that the first nonpenetrative sexual contact with Aquino in Grand Island occurred about a week after the family moved into the rental house. T.G.T. elaborated that on multiple occasions in the bathroom of the rental house, Aquino made her masturbate him with her hands. She did not use her mouth. At trial, T.G.T. denied any recollection of anything sexual occurring at the hotel.

Defense counsel repeatedly adduced during cross-examination that T.G.T. had told Champion during the February 24, 2022, forensic interview that Aquino had only "violated" her once and that that singular vaginal penetration had occurred at the hotel in Grand Island. Similarly, defense counsel adduced at trial that in T.G.T.'s pretrial deposition testimony, T.G.T. had said the only time Aquino vaginally penetrated her was at the hotel in Grand Island.

Defense counsel also adduced during cross-examination that in her pretrial deposition, T.G.T. had testified Aquino made her touch his penis with her hands and "do it with [her] mouth" at least three times while in Grand Island, with the last time being "two days before [she] told everything." Defense counsel, emphasizing that T.G.T. was under oath during her deposition, adduced that T.G.T. had described such sexual touching as having occurred at both the hotel and the house.

On redirect, T.G.T. explained that when she said Aquino penetrated her vaginally once, she was referring to the fact that such penetration occurred only once in Nebraska. When questioned as to timelines, T.G.T. testified, "The truth is I don't remember a lot of time."

(e) Aquino's Statements to Law Enforcement

Aquino was interviewed by Champion after his arrest. According to Champion's testimony at trial, Aquino said during the interview that he had a responsibility to make sure T.G.T. understood "what a male or man might expect and what from a woman, how to treat her or take care of her when nobody else wanted to be in her life." Aquino told Champion that T.G.T. "didn't have the body of somebody her age." He also told Champion that T.G.T.'s menstrual cycle was sometimes irregular and that in the past, she had gone for 3 months without a cycle.

Aquino explained that because the mother worked evenings, "he was entrusted in ensuring that [T.G.T.] bathed" and "took a shower." In order to make sure T.G.T. washed her hair, Aquino made T.G.T. keep the bathroom door open when showering.

Aquino reported during the interview that he and T.G.T.'s mother were not able to spend a lot of time together due to their work schedules. Aquino said their "sex life" had "taken a decline."

(f) Jury Instructions and Verdicts

In the jury instructions, the court set forth for the charge of first degree sexual assault of a child that "on or about December 1, 2021 through February 24, 2022," in Hall County, Aquino subjected T.G.T. to sexual penetration, Aquino was then 25 years of age or older, and T.G.T was at least 12 but less than 16 years of age. The court instructed the jury as to the charge of third degree assault that "on or about December 1, 2021 through February 24, 2022," in Hall County, Aquino subjected T.G.T. to sexual contact, Aquino was then 19 years of age or older, and T.G.T was at least 12 but less than 14 years of age. Defense counsel did not object to the jury instructions.

The jury found Aquino guilty on both counts. Aquino was sentenced to 45 to 60 years' incarceration for first degree sexual assault and 1 to 3 years' incarceration for third degree sexual assault, with the sentences to be served concurrently.

### 3. EXCLUSION OF EVIDENCE OF EMERGENCY ROOM VISIT AND ADMISSION OF "PRIOR BAD ACTS"

The jury did not hear evidence relating to an emergency room visit on March 25, 2022, where T.G.T. was seen by Dr. Carmen Partida and reported "the prior history of a penetrative sexual assault approximately 4 months ago from her stepfather." Four months before March 25, 2022, would have been November 25, 2021, 5 days before the mother said the family arrived in Nebraska.

#### (a) Praecipe for Subpoena and Motion in Limine

On Friday, May 5, 2023, the date of the final status hearing, with trial set to commence on Monday, May 8, and with no prior notice to the State, Aquino filed a praecipe for a subpoena duces tecum to have Partida testify for the defense and bring with her to trial all medical records pertaining to a visit "on or about March 5, 2022." Concurrently, defense counsel filed a motion in limine to prohibit the jury from hearing any evidence of "sexual contact/abuse outside of the state of Nebraska or outside of any of the dates alleged on the information." The motion deadline established by the court was April 28, 2023.

#### (b) Motion to Quash

That same date, the State responded with a motion to quash the subpoena duces tecum on the grounds that it called for the production of documents protected by doctor-patient privilege; Aquino had failed to notify the Department of Health and Human Services, which was T.G.T.'s legal guardian, of the request; and Aquino had not filed a motion pursuant to *State v. Trammell*[1] to obtain a crime victim's protected health and treatment information. A guardian ad litem had been appointed for T.G.T. on June 22, 2022. In July, T.G.T. had been removed from her mother's care and placed in the custody of the Department of Health and Human Services, and the State had been T.G.T.'s guardian since that time.

---

[1] *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989).

### (c) Exhibits 1 and 2

Exhibits 1 and 2 contain the record of a March 25, 2022, emergency room visit where T.G.T. was seen by Partida. There was no visit on March 5. Both exhibits are found in a sealed bill of exceptions.

Exhibit 1 was marked for purposes of the hearing on the motion to quash the subpoena, which took place at the final status hearing. Although the discussion between defense counsel and the prosecutor indicates that the entire 9-page document was taken to the hearing by defense counsel and shown to the prosecutor, exhibit 1 consists of only the first page of an "emergency department encounter" describing a date of service of March 25, 2022, and a complaint "of a prior sexual assault" of T.G.T. "approximately 4 months ago." It sets forth that T.G.T. was taken to the emergency room by her mother, "by private vehicle," because, according to the mother, "[T.G.T.'s] story of the events of the assault and the interactions between her and [Aquino] have varied and her mother is seeking clarification regarding events."

Exhibit 2 was marked at trial for identification during defense counsel's cross-examination of the mother. It contains the full report of the "emergency department encounter." There was "no indication for [an] exam [by a sexual assault nurse examiner] today or any other intervention," and "[T.G.T.] confirmed the prior history of a penetrative sexual assault approximately 4 months ago from her stepfather."

### (d) Relevancy, Offer of Proof, and Prior Bad Act Argument at Final Status Hearing

At the May 5, 2023, status hearing, defense counsel explained he wished to call Partida for the sole purpose of testifying that, during an examination of T.G.T. on March 25, 2022, T.G.T. reported that the sexual assault occurred 4 months prior. Defense counsel said what Partida's testimony would consist of:

> I subpoenaed [Partida] for the only purpose of [her] taking the stand and saying that [T.G.T.] went to the

hospital, spoke to [her], and reported to [her] that the alleged sexual assault occurred four months prior to the date of this document, March 25, 2022. That's it.

Defense counsel explained he wanted Partida to bring the requested documents "in case she has to refresh her recollection." Defense counsel stated he did not plan on offering any medical report into evidence.

Defense counsel said Partida's testimony was important because, according to the mother's anticipated testimony, the family did not move to Grand Island until December 1, 2021. Thus, Partida's testimony would show that the sexual assault reported during the emergency room visit occurred outside of Nebraska and outside of the dates alleged in the information. As a result, the assault was a prior bad act, and any evidence thereof should be excluded pursuant to defense counsel's motion in limine under Neb. Rev. Stat. § 27-404 (Cum. Supp. 2024). In response to the district court's question, defense counsel specifically denied that the evidence pertaining to T.G.T.'s report during the emergency room visit would be impeachment of T.G.T.

## (e) Pretrial Discovery

The history of pretrial discovery is complicated. Aquino's motion for pretrial discovery had been filed by the public defender on May 6, 2022. Aquino had asked, pursuant to Neb. Rev. Stat. § 29-1912 (Cum. Supp. 2024), to inspect, copy, or photograph his prior criminal record, recorded testimony before any grand jury, results and reports of physical or mental examinations and scientific tests or experiments made in connection with the case, tangible things that could be used as evidence, and investigatory reports by law enforcement.

The public defender did not specifically request the names and addresses of witnesses on whose evidence the charges are based, as is permitted by § 29-1912. The information filed in district court had already listed the names and cities of residence of 18 witnesses.

The public defender's motion also requested that the State furnish all exculpatory evidence in the possession of the prosecution and law enforcement.

The public defender set forth in his motion that he had no objection to the court's entering a reciprocal order pursuant to Neb. Rev. Stat. § 29-1916 (Cum. Supp. 2024).

On May 6, 2022, the district court entered an order generally granting Aquino's motion for discovery and stating that "[p]ursuant to . . . §29-1916, [Aquino] is ordered to provide reciprocal discovery to the State." The court ordered both parties to comply within 30 days.

Beginning in June 2022, the State filed notices of compliance with discovery, describing material generated by law enforcement and sent to Aquino. On July 26, Aquino, through the public defender, filed a notice of compliance describing nine pages generated by the public defender and sent to the State on July 27, further declaring that Aquino "possesses no other evidence."

Private defense counsel entered his appearance on July 26, 2022. The public defender moved to withdraw on that same date.

On May 2, 2023, approximately 9 months after entering his appearance for Aquino and 3 days before the final status hearing, private defense counsel sent to the State, via email, an evidence request letter. Defense counsel requested that the State produce, among other things, "[a] complete written summary of testimony to be presented by any State witness called as an expert witness including the witness' opinions, the basis and the reasons therefore [sic], and his/her qualifications"; "[t]he existence of any witness known to the State who is favorable to the defense"; and "[a]ny and all information that tends to detract from the credibility or probative value of the testimony and/or evidence that the State anticipates it will present at trial." Furthermore, defense counsel requested that the State produce for the defense's inspection "[a]ny statements made or adopted by witnesses which the State

intends to call to testify at any hearing (including a sentencing hearing) connected with the above-referenced case." Defense counsel, on behalf of Aquino, requested that the State comply or inform the defense of its intent not to comply within 10 days, reserving the right to oppose the introduction at any hearing of any evidence that the State failed to produce. Exhibit 3, which consists of the emailed discovery request, was marked at trial by defense counsel as an offer of proof in relation to a defense objection to testimony by Champion allegedly involving specialized knowledge about delayed disclosures of sexual assaults.

It appears that following the May 2, 2023, email request, the State filed a second supplemental notice of compliance, describing the addition of 86 pages generated by law enforcement. The State subsequently filed additional notices of compliance, making the total number of pages 257. The State set forth that it was not aware of any exculpatory evidence not contained in the information set forth in the notice of compliance.

Partida was not mentioned in any of the law enforcement reports and was not on the State's witness list.

At the final status hearing, the prosecutor noted that defense counsel had "disclosed a number of witnesses via email . . . some time ago," after he took over representation, and that "[a]t no time has he disclosed the name of [Partida] as a potential witness for the defense."

### (f) Source and Disclosure of Emergency Room Record

The prosecutor explained at the final status hearing that she was not familiar with Partida and that the defense did not "receive this discovery from [her]." The prosecutor said the State was not in possession of any medical records of T.G.T., and law enforcement did not request that T.G.T. be taken for a medical examination. In fact, the prosecutor "had no idea this medical examination took place."

Defense counsel responded that the record of the emergency room visit was "what [he had] in [his] trial notebook." Defense counsel had "just dug down to a bunch of information this week," "in the massive discovery" that he had. Defense counsel did not learn about Partida as a possible witness until he reviewed the documents in his notebook, which apparently had not been until shortly before the final status hearing.

Defense counsel did not know how or when the medical record came into his possession. He did not know "whether [the medical record] came from previous counsel or where [it] came from." He told the court, "I just know that when we put our trial notebook together, I have those documents in my trial notebook."

Defense counsel explained he did not personally receive the medical record from T.G.T.'s mother. He had never met the mother. Defense counsel said at the final status hearing that he believed the medical examination was at the request of law enforcement. Later, during defense counsel's cross-examination of the mother at trial, defense counsel was permitted to show the mother exhibit 2 without revealing its contents to the jury. The mother testified that she took T.G.T. to the emergency room of the local hospital. At the end of the hospital visit, she requested documents, which she took, the day after, to Champion. Additionally, the mother testified that she thought she had given exhibit 2 to Aquino's previous attorney.

Champion testified at trial that the mother contacted him on March 10, 2022, and that he had no contact with her thereafter. He testified that he had never directed T.G.T.'s mother to take T.G.T. to the hospital, nor did the mother ever provide him with the documentation in exhibit 2, and that in fact, during trial was the first time he had seen exhibit 2.

### (g) Arguments at Final Status Hearing

The prosecutor expressed that the failure to disclose the emergency room record may be a violation of the reciprocal discovery agreement: "I don't know who he received this

from. If this is discovery that he received from his client that should have been disclosed pursuant to our reciprocal discovery agreement, then I think we have an issue." The prosecutor explained she was taken by surprise by the praecipe for subpoena duces tecum, but also believed the information pertaining to the medical report was not relevant and could present a "*Trammell* issue."[2]

At no point during the final status hearing did defense counsel argue that, under the reciprocal discovery order, the defense was not obliged to disclose potential witness testimony or medical examinations. To the contrary, when questioned repeatedly by the district court whether defense counsel believed the defense had an obligation under the reciprocal discovery order to disclose the medical record, if it was never in the State's possession, defense counsel expressed only that "we are still on time," "there's no bad faith," and "things like this happen[]." Defense counsel pointed out that the State had also sent him some last-minute disclosures. During trial, in relation to an offer of exhibit 2 and a request that the court revisit its discovery sanction order, defense counsel asserted for the first time that the medical record therein was not subject to the reciprocal discovery order, for the reason that "[t]he defense is not using the exhibit in its case in chief."

### (h) District Court's Orders of Discovery Sanction and Quashing Subpoena Duces Tecum

The district court denied Aquino's motion in limine. The court reasoned that the prior sexual assaults were inextricably intertwined with the charged crimes. It then granted the State's motion to quash the subpoena duces tecum. The court found that Aquino had failed to provide the medical record or the identity of Partida to the State prior to May 5, 2023, for a jury trial beginning May 8, in violation of the court's reciprocal discovery order.

---

[2] See *id.*

"Based upon the significance of the [discovery] violation," and citing to *State v. Sierra*[3] and Neb. Rev. Stat. § 29-1919 (Cum. Supp. 2024), in its written order, the court "prohibit[ed] . . . Partida from being called as a witness by [Aquino]."

During its oral pronouncement at the final status hearing, the court additionally stated that under *State v. Trammell*, it would not allow Partida to bring the medical record to trial.[4]

The district court said it would reconsider its order prohibiting Partida from testifying at trial if Aquino could provide, before trial, evidence that Partida was disclosed to the State. At no point during the pretrial hearing or at trial did defense counsel ask the court for permission to subpoena Partida for the limited purpose of having her appear to make an offer of proof.

### (i) Offer of Exhibit 2 at Trial

Defense counsel offered exhibit 2 at trial after the mother identified it as the medical document she provided to Champion. The prosecutor objected on the grounds of hearsay, relevance, privilege, and the discovery violation. The court sustained the objection on all grounds.

### 4. Appeal to Court of Appeals

Aquino timely appealed his convictions to the Court of Appeals. As relevant to the assigned errors on further review, Aquino assigned to the Court of Appeals that (1) under *State v. Woods*,[5] the district court erred in determining he had committed a discovery violation for failing to disclose Partida and the documentation in exhibits 1 and 2, and (2) alternatively, he received ineffective assistance when trial counsel failed to disclose Partida's identity and the documentation in exhibit 2,

---

[3] *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

[4] See *State v. Trammell, supra* note 1. See, also, *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000).

[5] *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998).

as obligated either by the discovery order or by operation of *Trammell*.[6]

The Court of Appeals affirmed Aquino's convictions. It held that trial counsel failed to preserve the assigned trial court error for appellate review. First, trial counsel "made no attempt during trial to question T.G.T. about the alleged statement she made to . . . Partida," and this was not prohibited by the district court's orders.[7] Second, trial counsel did not attempt to impeach T.G.T. with the medical record, "such that the trial court never had the opportunity to revisit its pretrial ruling."[8] Third, trial counsel "did not present an offer of proof at trial of what . . . Partida would have testified to if allowed to testify."[9]

On this last point, the Court of Appeals ignored Aquino's offer of proof at the final status hearing asserting that Partida would testify consistent with the medical record of T.G.T. that said the reported sexual assault occurred approximately 4 months prior to the date of the medical record, March 25, 2022. It also ignored the offer of exhibit 1 at the final status hearing and the offer of exhibit 2 at trial.

The Court of Appeals instead held that to preserve the question of whether a trial court has erred in issuing a discovery sanction, the "'offer of proof must be made at trial.'"[10] The court of Appeals relied on *State v. Schreiner*,[11] which involved the application of Neb. Rev. Stat. § 27-103 (Reissue 2016) to court orders granting the State's pretrial motions in limine to exclude inadmissible and prejudicial evidence at trial. *Schreiner* did not involve a discovery sanction. We held in *Schreiner*

---

[6] See *State v. Trammell, supra* note 1.

[7] *State v. Aquino*, No. A-23-596, 2024 WL 3873804 at *6 (Neb. App. Aug. 20, 2024).

[8] *Id.* at *9.

[9] *Id.* at *6.

[10] *Id*.

[11] *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008).

that the offer of proof must be made at trial because "[a] motion in limine is only a procedural step to prevent prejudicial evidence from reaching the jury" and does not "obtain a final ruling upon the ultimate admissibility of the evidence."[12]

After concluding that the trial error had not been preserved, the Court of Appeals moved on to the claim of ineffective assistance. It found Aquino was not prejudiced by trial counsel's allegedly deficient conduct, because the only possible prejudice from the court's orders resulting from trial counsel's alleged deficiency arose from trial counsel's failure to make an offer of proof at trial or question T.G.T. about her statement to Partida that the sexual assault occurred approximately 4 months before the emergency room visit. According to the Court of Appeals, since neither of these failures was specifically assigned as error and argued on appeal, they were not before the Court of Appeals.

## III. ASSIGNMENTS OF ERROR

In his memorandum brief in support of further review, Aquino assigns the Court of Appeals erred in finding (1) that Aquino had failed to preserve error relating to the trial court's ruling that quashed the subpoena of Partida and barred admission of the documentation in exhibits 1 and 2 and (2) that Aquino's assignments of error "regarding trial counsel's ineffective assistance regarding [the] Partida evidence [were] both too finely tailored and insufficiently broad to be effective."

## IV. STANDARD OF REVIEW

[1] Discovery in a criminal case is generally controlled by either a statute or court rule. Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.[13]

---

[12] *Id*. at 407, 754 N.W.2d at 755.

[13] *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014).

[2] The exclusion of evidence in a criminal case as a sanction for a discovery violation is subject to harmless error review.[14]

[3] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[15]

## V. ANALYSIS

The issues presented on further review revolve around the district court's finding that Aquino committed a discovery violation and barring, as a sanction, evidence at trial that T.G.T. reported during a medical examination on March 25, 2022, "the prior history of a penetrative sexual assault approximately 4 months ago from her stepfather," which would be approximately November 25, 2021. The court's pretrial orders expressly prohibited Aquino from calling Partida as a witness or bringing with her to trial any medical records pertaining to the emergency room visit. The court also orally pronounced that Aquino had not followed the discovery procedures relevant to that privileged medical record. At trial, after defense counsel asked the court to revisit its pretrial order and offered exhibit 2 into evidence, the court sustained the State's objections to the medical record on grounds of, among other things, privilege and the discovery violation.

Aquino does not directly take issue with the trial court's rejection of his proffer of exhibit 2 at trial, but argues the trial court erred by "excluding evidence related to Exhibit 2 and testimony from . . . Partida."[16] Aquino explains that the discovery sanction "eliminated [his] ability to present extrinsic

---

[14] See, e.g., *Thomas v. Wyrick*, 687 F.2d 235 (8th Cir. 1982); *U.S. v. Gray-Burriss*, 791 F.3d 50 (D.C. Cir. 2015); *State v. Schopp*, 653 So. 2d 1016 (Fla. 1995); *Williams v. State*, 256 Ga. App. 249, 568 S.E.2d 132 (2002); *People v. Echols*, 146 Ill. App. 3d 965, 497 N.E.2d 321, 100 Ill. Dec. 343 (1986); *State v. Martens*, 996 N.W.2d 249 (Minn. App. 2023); *Jones v. City of Seattle*, 179 Wash. 2d 322, 314 P.3d 380 (2013).

[15] *State v. Rezac, ante* p. 352, 15 N.W.3d 705 (2025).

[16] Brief for appellant at 13.

evidence of a prior inconsistent statement affecting a material element of the crime."[17] Aquino asserts that the order quashing the subpoena denied his ability to make an offer of proof "with the use of the witness."[18]

Aquino does not raise on appeal that the court erred in failing to impose a lesser sanction for the discovery violation, and he did not make that argument below.[19] He argues only that he did not violate the discovery order. He explains that while the public defender's motion for discovery that preceded the court's reciprocal discovery order requested results and reports of physical or mental examinations, it did not request witnesses. Furthermore, Aquino argues that because the evidence was for possible impeachment of T.G.T., it was not evidence "[t]he defendant intends to produce at trial," as described by § 29-1916(1)(b).

1. Failure to Make Offer of Proof at Trial

We hold that Aquino adequately raised the matter of the discovery sanction and order to quash through his offer of exhibit 2 and the evidence adduced pertaining to whether there was a discovery violation. To the extent a defendant must give the district court an opportunity at trial to revisit the merits of its pretrial order of a discovery sanction, an issue we need not decide in this appeal, trial counsel adequately did so when he offered exhibit 2 at trial and presented evidence that T.G.T.'s mother had given the medical record to Champion.

[4] Section 27-103 provides:

(1) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

. . . .

---

[17] *Id*. at 14.

[18] *Id*. at 17.

[19] See *State v. Cunningham*, 197 Or. App. 264, 105 P.3d 929 (2005).

(b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

(2) The judge may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. He may direct the making of an offer in question and answer form.

(3) In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

(4) Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge.

Section 27-103 did not change the rule that where evidence is excluded, an offer of proof is generally a prerequisite to review on appeal.[20]

[5] An offer of proof brings the substance of the evidence before the trial court and the appellate court so that both may determine whether the refusal to accept the evidence was error.[21] A commentator has observed that the offer of proof requirement serves two policy goals: (1) aiding an appellate court in determining if trial error influenced the trier's decision and (2) giving the trial judge sufficient information to aid in making a sound ruling.[22] When the condition of the record and form of the question itself show that it is relevant and competent, no offer of proof is necessary.[23]

[20] *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785 (1991).

[21] *State v. Bennett*, 2 Neb. App. 188, 508 N.W.2d 294 (1993).

[22] Roger C. Park & Aviva Orenstein, Trial Objections Handbook § 1:11 (2d ed. 2024).

[23] *State v. Kramer, supra* note 20; *Fite v. Ammco Tools, Inc.*, 199 Neb. 353, 258 N.W.2d 922 (1977).

The Court of Appeals, in finding that Aquino had failed to preserve the correctness of the discovery sanction by failing to renew his offer of proof at trial, relied on cases addressing appellants' challenges to court orders granting motions in limine to exclude evidence at trial on the ground that the evidence was inadmissible. This case law is inapposite to the case at bar.

The definition of "in limine" is "'[o]n or at the threshold; at the very beginning; preliminarily.'"[24] A motion in limine is but "'a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issues.'"[25]

As we explained in *Schreiner*, in the context of a pretrial order granting the State's motion in limine to exclude inadmissible witness testimony, unless "the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked," "to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question," the record must show an offer to prove the facts sought to be elicited, "[a]nd that offer of proof must be made at trial."[26] We elaborated that

[b]ecause overruling a motion in limine is not a final ruling on the admissibility of evidence and does not present a question for appellate review, a question concerning the admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate

---

[24] *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984), quoting Black's Law Dictionary 708 (5th ed. 1979).

[25] *State v. Schrock*, 2013 Ohio 441, ¶ 8, 986 N.E.2d 1068, 1072 (Ohio App. 2013).

[26] *State v. Schreiner, supra* note 11, 276 Neb. at 407, 754 N.W.2d at 755. Accord *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). See, also, *State v. King*, 316 Neb. 991, 7 N.W.2d 884 (2024); *BCL Properties v. Boyle*, 314 Neb. 607, 992 N.W.2d 440 (2023).

review by an appropriate objection or offer of proof during trial.[27] "A motion in limine is only a procedural step to prevent prejudicial evidence from reaching the jury" and does not "obtain a final ruling upon the ultimate admissibility of the evidence."[28]

In this case, we are not presented with an order granting a motion in limine. The court's exclusion of the evidence and order quashing the subpoena, as a discovery sanction, do not concern the court's anticipatory treatment of the evidence under the Nebraska Evidence Rules, which must be revisited in the context of the trial itself.

[6] Courts have frequently refused to find reversible error where the defendant failed to make an offer of proof of the substance of the evidence excluded as a discovery sanction.[29] An aggrieved party must ensure that the trial record is sufficient for an appellate court to review whether the trial court committed reversible error in imposing a sanction for a discovery violation, whether the chosen sanction was an abuse of discretion, and whether the exclusion of the evidence was harmless.[30] This obligation must be viewed in light of what is reasonably possible in light of the court's orders, but a party cannot prevent an appellate court from affirming under harmless error by failing to create a record that could have been made. It may also behoove a litigant to give the district

---

[27] *State v. Schreiner, supra* note 11, 276 Neb. at 407, 754 N.W.2d at 755. See, also, *State v. Timmens*, 263 Neb. 622, 641 N.W.2d 383 (2002); *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983).

[28] *State v. Schreiner, supra* note 11, 276 Neb. at 407, 754 N.W.2d at 755.

[29] See Annot., 9 A.L.R.4th 837 (1981).

[30] See, e.g., *State v. Dorow*, 116 Ariz. 294, 569 P.2d 236 (1977); *Dist. of Col. v. Kora & Williams Corp.*, 743 A.2d 682 (D.C. App. 1999); *Shaw v. Sundaram*, 108 N.E.3d 923 (Ind. App. 2018); *Dewitz by Nuestel v. Emery*, 508 N.W.2d 334 (N.D. 1993); *Walker v. Kleiman*, 896 S.W.2d 413 (Tex. App. 1995); *Estate of Fahnlander*, 81 Wash. App. 206, 913 P.2d 426 (1996); *In re Paternity of HLG*, 368 P.3d 902 (Wy. 2016). See, also, 9 A.L.R.4th, *supra* note 29. But see *Pitcher v. Centene Corp.*, 602 S.W.3d 216 (Mo. App. 2020).

court an opportunity to revisit a pretrial discovery sanction. But neither the objective of ensuring an adequate record for appellate review nor the objective of giving the trial court an opportunity to revisit its ruling must be accomplished through a formal offer of proof at trial.

[7] In our case law reviewing pretrial court orders quashing subpoenas, we have never required that an objection and offer of proof be made at trial to preserve the error.[31] Likewise, we have not required an offer of proof at trial to review whether a court abused its discretion in issuing a pretrial discovery sanction excluding evidence.[32] Other courts similarly recognize that the rules governing the need to renew an offer of proof at trial to preserve error relating to preliminary evidentiary rulings on admissibility do not apply to evidence barred or stricken as a sanction for a discovery violation.[33]

In this case, defense counsel adequately ensured that the trial record is sufficient for an appellate court to review whether the trial court committed reversible error in imposing the contested discovery sanction. Defense counsel also gave the district court an opportunity to revisit its prior ruling excluding Partida's testimony and the medical record as a sanction for a discovery violation at trial; as we have noted, defense counsel offered exhibit 2, requested that the district court revisit its discovery sanction order, and argued that the medical record was not subject to the reciprocal discovery order.

Without deciding whether the renewal at trial of questions pertaining to a discovery sanction is necessary to preserve for appeal the trial court's alleged error in imposing the sanction,

---

[31] See, e.g., *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020); *State v. Valentino*, 305 Neb. 96, 939 N.W.2d 345 (2020); *Gallner v. Gallner*, 257 Neb. 158, 595 N.W.2d 904 (1999).

[32] See, *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021); *State v. Sierra, supra* note 3; *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016).

[33] See *Blair v. Ta-Seattle East No. 176*, 171 Wash. 2d 342, 254 P.3d 797 (2011).

we hold that defense counsel adequately preserved the issue of whether the district court erred in this case.

## 2. Harmless Trial Court Error

Considering exhibit 2 and defense counsel's offer of proof at the pretrial hearing as to what Partida would have testified to, we need not decide whether defense counsel committed a discovery violation. We also need not determine whether the court abused its discretion in excluding the evidence as opposed to imposing a lesser sanction, which, in any event, is not argued by Aquino on appeal. Assuming without deciding that the trial court erred in finding a discovery violation and imposing the sanction of barring Partida from testifying or the defense from utilizing exhibit 2 as extrinsic evidence of a prior inconsistent statement, we hold that such error was harmless.

T.G.T. testified at trial that Aquino vaginally penetrated her around February 22, 2022, in the house in Grand Island. Aquino points out this was inconsistent with her report to Partida that Aquino had vaginally penetrated her on approximately November 25, 2021.

Aquino's principal contention as to how he was harmed by the court's sanctions seems to revolve around his alleged inability to impeach T.G.T.'s credibility based on this inconsistency. Aquino does not suggest that T.G.T.'s prior inconsistent statement to Partida was relevant to venue or territorial jurisdiction. Aquino simply describes the timeframe T.G.T. reported to Partida as preceding the dates alleged in the original information. Aquino does not acknowledge that the information was amended to conform to the evidence and that the jury was instructed it must decide whether the assaults occurred on or about December 1, 2021, through February 24, 2022.

[8,9] The exact date of commission is not a substantive element of first or third degree sexual assault of a child.[34] The statutes governing sexual assault of children recognize and

---

[34] *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015).

accommodate the unique circumstances surrounding young victims, who "are often unsure of the date on which the assault or assaults occurred" and "may have no meaningful reference point of time or detail by which to distinguish one specific act from another."[35] With that in mind, T.G.T.'s prior report to Partida of penetrative sexual assault is sufficiently within the date range of the instructions that it occurred on or about December 1, 2021, through February 24, 2022.

[10] Errors, other than structural errors, which occur within the trial and sentencing process, are subject to harmless error review.[36] This is consistent with § 27-103, which states that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected, and Neb. Rev. Stat. § 29-2308(1) (Reissue 2016), which provides that no judgment in a criminal case shall be set aside or new trial granted because of the rejection of evidence, unless a substantial miscarriage of justice has actually occurred.

[11-14] Harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result.[37] An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt.[38] When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, materially influenced the outcome of the case.[39] Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would

---

[35] *Id.* at 343, 873 N.W.2d at 456 (internal quotation marks omitted).

[36] *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

[37] *State v. Kidder*, 299 Neb. 232, 908 N.W.2d 1 (2018).

[38] *State v. Matthews*, 289 Neb. 184, 854 N.W.2d 576 (2014).

[39] See *State v. Kidder, supra* note 37.

surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[40]

[15-17] Whether error is harmless in a particular case depends upon a host of factors.[41] Whether the exclusion of witness testimony is harmless depends upon the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case.[42] Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.[43]

[18] While Aquino was barred from calling Partida to testify and his offer of exhibit 2 at trial was denied, the Court of Appeals correctly observed that Aquino was not prohibited from asking T.G.T. what she said to Partida, and he chose not to do so. Aquino argues that, considering the prohibition from using extrinsic evidence of the prior inconsistent statement, it was "madness" for the Court of Appeals to suggest he should have used the medical report authored by an unavailable third party "to impeach a teenage assault victim through the aid of an interpreter."[44] But it is speculative that T.G.T. would have even denied making the statement. If a witness is questioned about the prior inconsistent statement and admits to making it, then counsel is precluded from introducing extrinsic

---

[40] *State v. Pangborn, supra* note 36.

[41] *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

[42] *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

[43] *State v. Matthews, supra* note 38.

[44] Brief for appellant in support of petition for further review at 6.

evidence of the statement itself.[45] In other words, any prohibition of presenting extrinsic evidence of the inconsistent statement would have been immaterial.

Furthermore, an attempt to impeach T.G.T. could have raised a new aspect of relevancy of the excluded evidence that had not been considered at the pretrial hearing because defense counsel had specifically denied he wished to introduce the evidence for that purpose. That new relevancy may have changed the court's decision to exclude the evidence as the sanction.

Even if Aquino was hindered by the discovery sanction in his ability to confront T.G.T. with her prior inconsistent statement, he was not materially harmed. As to the charge of third degree assault, the barred evidence has little to no relevance. There was abundant testimony that Aquino made T.G.T. perform manual stimulation of Aquino's penis on multiple occasions while they lived in Grand Island, and there is no indication from the medical report that Partida questioned T.G.T. as to whether there was a history of nonpenetrative sexual touching. Confirming a prior history of a penetrative sexual assault is not inconsistent with having been the victim of nonpenetrative sexual assault.

As for first degree sexual assault, even if exhibit 2 is read as T.G.T.'s indicating the reported incident was the only penetrative sexual assault that had occurred, that statement is consistent with T.G.T.'s initial reports, adduced at trial, that a singular penetrative assault occurred when the family first arrived in Grand Island. Also, defense counsel adduced T.G.T.'s deposition testimony that Aquino penetrated her mouth with his penis several times while they were living in Grand Island.

Relatedly and most importantly, defense counsel confronted T.G.T. with inconsistent statements similar to the statement made to Partida. Defense counsel confronted T.G.T. with both her prior report to Champion and her prior deposition

---

[45] See, Neb. Rev. Stat. § 27-613 (Reissue 2016); R. Collin Mangrum, Mangrum on Nebraska Evidence § 27-613 (2024).

testimony describing only one incident of vaginal penetration occurring at the hotel sometime around December 1, 2021. This was approximately 4 months before the March 25, 2022, emergency room visit, making the evidence adduced on cross-examination cumulative of the barred evidence of T.G.T.'s report to Partida.

Defense counsel made it abundantly clear to the jury that T.G.T. was describing at trial incidents of sexual assault that she had never previously reported. T.G.T.'s credibility as to the times, places, and details of the sexual assaults described by T.G.T. at trial was thoroughly tested.

Accordingly, the court's restrictions on confronting T.G.T. with extrinsic evidence of her statement to Partida were harmless beyond a reasonable doubt. The trial court's rulings, even if they were found to be in error, did not materially influence the outcome of the case, considering the totality of the record.

### 3. Record Affirmatively Shows No Prejudice From Allegedly Deficient Conduct

Having found, for reasons different from those articulated by the Court of Appeals, that the district court did not commit reversible error in imposing the discovery sanction, we find, also for different reasons than those stated by the Court of Appeals, no merit to Aquino's alternative claim of ineffective assistance of trial counsel. Because the record establishes that the court's sanctions were harmless beyond a reasonable doubt, even if trial counsel was deficient in failing to disclose Partida's identity and the documentation in exhibit 2, Aquino is unable to establish prejudice from the alleged deficient conduct. The burden on the defendant to demonstrate prejudice on an ineffective assistance of counsel claim is a higher bar to relief than harmless error.[46]

[19-21] The record on appeal is sufficient to adequately review the question on ineffective assistance if it establishes

---

[46] See Justin Murray, *Prejudice-Based Rights in Criminal Procedure*, 168 U. Pa. L. Rev. 277 (2020).

either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[47] To prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and prejudice.[48] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[49]

Having already found that the exclusion of T.G.T's report to Partida of a "prior history of a penetrative sexual assault approximately 4 months ago" was harmless error, we find, for similar reasons, that the trial record establishes as a matter of law that Aquino was not prejudiced by any deficient conduct of trial counsel in failing to disclose the medical report or Partida's identity, or to follow *Trammell* procedures for the privileged medical information.[50]

## VI. CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals affirming Aquino's convictions of sexual assault of a child in the first and third degree.

Affirmed.

---

[47] See *State v. Rezac, supra* note 15.

[48] See *State v. Assad*, 304 Neb. 979, 938 N.W.2d 297 (2020).

[49] *Id*.

[50] See *State v. Trammell, supra* note 1.