STATE OF NEBRASKA, APPELLEE, V. ROBERT E.C. TRAMMELL,
APPELLANT.
435 N.W.2d 197

Filed February 10, 1989.   No. 88-299.

Dennis R. Keefe, Lancaster County Public Defender, and
Richard L. Goos for appellant.

Robert M. Spire, Attorney General, and William L.
Howland for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

BOSLAUGH, J.

The defendant, Robert E.C. Trammell, was convicted of first degree sexual assault and of being a habitual criminal. He was sentenced to imprisonment for 15 to 25 years with credit for presentence incarceration. He has appealed and contends the trial court erred in refusing to permit him to discover and present evidence concerning the victim's past and present psychiatric condition. He also contends the trial court erred in receiving evidence concerning a prior felony conviction.

The record shows that the assault took place at the victim's apartment in Lincoln, Nebraska, on November 5, 1986. The victim had become acquainted with the defendant in October 1986, and he had befriended her on a number of previous occasions, giving her rides and gifts of furniture and clothing. On these previous occasions, there had been no sexual contact between the victim and the defendant.

On November 5, 1986, at about 2 p.m., the defendant came to the victim's apartment, wanting to talk. According to the victim, the defendant was staggering, acting "differently," and appeared to be mad. The defendant accused her of "messing around with three other guys." She testified that the defendant "beat me up," that he hit her with an open hand on the side of her head several times, and that he also struck her in the left rib area with a closed fist, causing her to cry. The defendant reacted to her crying by telling her to shut up and repeatedly striking her. The victim tried to fight him off, but he kept hitting her. The defendant then made her go into the bedroom and have vaginal, rectal, and oral sex with him without her consent. She was forced to engage in vaginal intercourse about six times, rectal intercourse two to three times, and oral intercourse one to two times. Some of the sex acts took place in the living room. The defendant left at about 4 p.m. The victim then put on her clothes and walked to the Bel-Air Home, where she reported the assault to her landlady's niece, Cathy Bienka Thomas, and the police were called.

Thomas testified that the victim came to the Bel-Air Home and reported that she had been sexually assaulted.

Officer Robert Citta, a Lincoln police officer, testified that he went to the Bel-Air Home at 1640 hours and investigated the case. He testified the victim reported a sexual assault to him. He took her first to her apartment, where he gathered evidence, and then to the Lincoln General Hospital emergency room, where a sexual assault examination was performed and a "rape kit" was procured.

Sandra Sons, the victim's landlady and the owner of Bel-Air, testified that when the victim came to Bel-Air on November 5, 1986, she was frightened, had bruises, and was crying.

The examining physician, Dr. James Billups, found the presence of sperm, indicating that the victim had experienced sexual contact within the prior 24 to 48 hours. He saw the victim again on November 11, 1986, at which time there was a complaint of pain in the rib area, and x rays revealed a fractured rib. The rib bruises were three separate and distinct bruises.

Det. Gregory Sorensen interviewed the victim and presented a photographic array to her. The victim selected the photograph of the defendant as being the person who had assaulted her.

Dr. Reena Roy, a forensic serologist, testified that she examined the various items from the sexual assault kit and the victim's clothing. She found semen on the vaginal swab, on the crotch area of the victim's panties, on the crotch area of the victim's pants, and on the inside of the victim's T-shirt. She testified that the defendant was a nonsecretor and, based on her testing, that the semen she found could have come from the defendant. She could not eliminate the defendant as the source of the semen. She testified that 20 percent of the people are nonsecretors and that taking into account all of the factors, including the fact that the defendant was a PGM 1 type, approximately 12 percent of the black male population fit the category of the defendant, that is, nonsecretors with that PGM type. Dr. Roy had found PGM 1 markers on the vaginal swab, the crotch area of the panties, and the crotch area of the victim's pants.

The victim is a single woman, 40 years of age. She completed one-half of the ninth grade. She did not complete high school because she had a nervous breakdown when she was 13 years of age and was institutionalized on three different occasions at the

Lincoln Regional Center, the last admission being when she was 27 years of age. The victim testified that at the time of the assault, she was taking 5 mg of Prolixin, a prescription medication which she had been taking since being at the Lincoln Regional Center. She described the medication as a sedative and stated that it worked to calm her nerves, that the 5 mg dosage was not a strong dosage, and that the medication's effect was minimal. The victim testified that she took Prolixin only part of the time, about every other day, and that she could not recall whether she had taken the medication on the day of the assault.

Dr. Billups, the physician who treated the victim at the emergency room on the day of the assault, testified that 5 mg of Prolixin was a normal dose for an adult and that it was usually prescribed to control a psychosis. Dr. Billups defined persons with psychotic behavior as ones who are not able to think rationally and to conduct their affairs in a normal manner and testified that they may have difficulty with reality. Additionally, he stated that for those psychotic individuals not on medication, they can display psychotic behavior at one moment and soon thereafter appear normal. He further testified that if an individual had been taking Prolixin for many years and then stopped taking the drug, there could be a return to a psychotic condition.

Prior to trial, the State filed a motion in limine requesting that the defense be prevented from adducing evidence regarding past physical or mental illnesses and previous hospitalizations of the victim. The defense contested the State's motion and requested an evidentiary hearing in order to show the court the need for the defense to "make inquiry of [the victim's] mental abilities and capacities in order to explain . . . sharp conflicts in the facts in this case." Defense counsel told the trial court that the defense wanted to call the victim and one of her treating physicians. Regarding the physician, the defense wanted to inquire as to whether he prescribed Prolixin for the victim, whether he continued the prescription for her, why he prescribed the medication for her, and what effect the drug would have upon her mental capacity. Defense counsel then asked the victim to waive her physician-patient privilege in the interest of the defendant's having a fair trial. The victim stated,

on the record, that she did not choose to waive her privilege as to prior hospitalizations at the Lincoln Regional Center or as to treatment other than that necessitated by the assault.

The trial court sustained the motion in limine and denied the request of the defendant. The trial court stated that the defense could ask the victim if she was ever in the regional center, whether she had ever had mental problems, and whether she was taking any drugs and the effects of those medications on her. The court prohibited testimony from her doctors, but would allow the defense to call an expert witness to testify regarding the effects of certain medications. The defendant renewed his request to present evidence concerning the past and present treatment of the victim several times during the trial.

The defendant contends that the ruling of the trial court which prevented the defendant from obtaining the medical records concerning the victim's hospitalization at the regional center and prevented the defendant from calling any of the physicians who treated the victim at the regional center and her personal physicians whom she has been consulting at this time denied him due process of law, prevented him from having a fair trial, and curtailed his right of confrontation and right to compulsory process.

So far as the records of the victim's hospitalization at the regional center are concerned, or testimony concerning treatment of the victim while she was confined in the regional center, these were matters which occurred some 12 or 13 years before the offense involved in this case was committed. Those matters were too remote to have any relevance at this time, and there was no error in refusing to permit the defendant to explore those matters. The right to inquire concerning the victim's current treatment, however, is a different matter.

Neb. Rev. Stat. § 27-504 (Reissue 1985) provides that communications between a patient and a physician for the purpose of diagnosis or treatment of a physical, mental, or emotional condition, not intended to be disclosed to third persons, are privileged.

With respect to the defendant's contention that the patient-litigant exception is applicable and constituted a waiver of the privilege, the victim was a witness, not a party, and thus

had not placed her condition in issue. See *People v. Rocco*, 21 Cal. App. 3d 96, 98 Cal. Rptr. 365 (1971).

The fact, however, that the physician-patient privilege protects from disclosure confidential communications between the victim and physicians who are treating her for her mental condition does not mean the defendant is without remedy. In such a situation, where the witness refuses to waive the privilege, the result is that the testimony of the witness is inadmissible because the defendant is prevented from full and, perhaps, effective cross-examination of the witness. This result has been recognized in several decisions. It appears to be the only method by which both the right of the witness and the right of the defendant may be accommodated.

In *State v. Esposito*, 192 Conn. 166, 471 A.2d 949 (1984), the defendant was convicted of kidnapping and sexual assault. Before trial the defendant sought to examine records of the Connecticut Mental Health Center pertaining to the victim. With respect to the defendant's right to examine the records in question, the Connecticut Supreme Court said at 178-80, 471 A.2d at 956:

> The sixth amendment to the constitution of the United States guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state criminal proceedings. *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). . . . Confrontation means more than the right to confront the witness physically; the primary interest secured by confrontation is the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). . . .
>
> . . . .
>
> Generally, a trial court has some discretion in the matter of discovery where material is sought for impeachment purposes. *State v. Januszewski*, supra, 171. If, however, the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon

such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. . . . If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal.

See, also, *State v. Burak*, 201 Conn. 517, 518 A.2d 639 (1986).

The trial court was in error in permitting the victim to testify without permitting the defendant to discover and produce evidence concerning the current treatment of the victim's mental condition. The error requires that the judgment be reversed and the cause remanded for further proceedings.

The defendant's other assignment of error relates to a certified copy of a conviction for sodomy which was received at the enhancement hearing. The exhibit in question disclosed that the defendant was represented by counsel. That is sufficient when the conviction is offered for enhancement purposes. In order to prove a prior conviction for enhancement purposes, the State need only show that at the time of the prior conviction the defendant had, or waived, counsel. *State v. Slezak*, 226 Neb. 404, 411 N.W.2d 632 (1987); *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989).

The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.