Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/17/2022 09:06 AM CDT

State of Nebraska, appellee, v. Jose J.
Santos-Romero, appellant.
___ N.W.2d ___

Filed May 10, 2022.    No. A-21-389.

1. **Juries: Waiver.** A defendant's express agreement or consent is no longer required to waive the right to have the jury sequestered after the case has been submitted to it.
2. **Records: Appeal and Error.** A party's brief may not expand the evidentiary record, nor may it expand an appellate court's transcript.
3. ____: ____. It is incumbent upon an appellant to supply a record which supports his or her appeal.
4. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Affirmed.

Jim K. McGough and Mark J. Foxall, of McGoughLaw, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Pirtle, Chief Judge, and Riedmann and Bishop, Judges.

Riedmann, Judge.

INTRODUCTION

Jose J. Santos-Romero appeals his convictions of two counts of first degree sexual assault of a child. On appeal,

he claims that the district court failed to sequester the jury and challenges the procedure for obtaining privileged mental health records. He also asserts that he received ineffective assistance of trial counsel in two respects. We affirm.

## BACKGROUND

In November 2019, C.G., then age 12, disclosed that her mother's boyfriend, Santos-Romero, had sexually assaulted her. Santos-Romero was ultimately charged with two counts of first degree sexual assault of a child. Prior to trial, Santos-Romero filed a motion pursuant to the procedure the Nebraska Supreme Court set forth in *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989), requesting an order requiring the State to make available to the court for an in-camera inspection all documents prepared by C.G.'s therapist in treatment of her. After holding a hearing, the district court granted the motion and ordered the State to make available to the court for an in-camera inspection the materials outlined in the motion.

A jury trial commenced in October 2020. The evidence generally revealed that in the summer of 2019, when C.G. was 12 years old and Santos-Romero was 41 years old, he subjected her to sexual penetration on several occasions.

The parties finished presenting evidence just before lunch on October 20, 2020. The court informed the jurors that they would get an extended lunch period so it could finalize the jury instructions with the attorneys and told them that it would read the instructions to them after closing arguments. Thus, the court asked the jurors to return at 2 p.m., "and hopefully[,] we'll all be hearing closing arguments from both sides. And then if we have some time, I'll give you some — the jury instructions, but you won't begin to decide this case until tomorrow morning at 9 o'clock, okay?"

During the lunch break, outside the presence of the jury, the court reviewed the jury instructions with the parties, and once the jury returned from lunch, closing arguments were given. After closing arguments, the court read the first 14 of 15 jury instructions and dismissed the jury at 3:44 p.m. to

return the following day at 9 a.m. for the final jury instruction and to begin deliberating.

The case was submitted to the jury at 9:21 a.m. on October 21, 2020, and the jury reached its verdicts at 2:20 p.m., finding Santos-Romero guilty of both counts. He was sentenced to 25 to 30 years' imprisonment for each conviction, with the sentences to run consecutively. Santos-Romero timely appeals.

## ASSIGNMENTS OF ERROR

Santos-Romero assigns that the district court erred in (1) failing to sequester the jury after the case had been submitted and (2) violating his Sixth Amendment right to confrontation and right to a fair trial. He also assigns that his trial counsel was ineffective in failing to investigate the case and limiting his defense.

## ANALYSIS

*Jury Sequestration.*

Santos-Romero first argues that the district court erred in failing to sequester the jury after the case was submitted. We find that the jury was sequestered from the time the case was submitted to it until it reached its verdicts; therefore, we reject this assignment of error.

[1] Nebraska law provides that in a criminal case, when a case is finally submitted to the jury, its members must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court. Neb. Rev. Stat. § 29-2022 (Reissue 2016). A defendant's express agreement or consent is no longer required to waive the right under § 29-2022 to sequester the jury. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

In the present case, the parties concluded presenting evidence just before lunch on October 20, 2020. After the jury returned from an extended lunch break, closing arguments were given, and the court read the first 14 of 15 jury instructions and dismissed the jury to return the following morning for the final jury instruction and to begin deliberating.

The final jury instruction indicates that the case was submitted to the jury at 9:21 a.m. on October 21, 2020, and the record shows that the jury reached its verdict at 2:20 p.m. The jury remained together from the time of submission until it reached its verdicts approximately 5 hours later. Thus, the jury was sequestered as required by § 29-2022.

Santos-Romero also challenges the procedure the court used in releasing the jury the previous night and completing its recitation of the jury instructions the following morning before submitting the case to the jury. He relies on Neb. Rev. Stat. § 29-2016 (Reissue 2016), which provides the order of procedure for jury trials, including that after closing arguments are concluded, the court "shall immediately and before proceeding with other business charge the jury." He claims that the court's procedure here violated this requirement and intentionally circumvented the need to sequester the jury. However, he did not assign this issue as error, nor did he object to this procedure at trial. We therefore find no reversible error related to sequestration of the jury.

*Procedure for Access to*
*Mental Health Records.*

Santos-Romero asserts that the procedure the Supreme Court established in *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989), for obtaining privileged medical records violated his right to confrontation and right to a fair trial. Our record reveals that Santos-Romero filed a motion under *Trammell* for an in-camera review of C.G.'s mental health records and that the district court ordered the State to produce the records for that in-camera review. The record does not reveal, however, whether the State complied with that order, whether an in-camera review was conducted, whether any records were ordered to be released to Santos-Romero, or whether any records were withheld from him.

[2,3] In his brief, Santos-Romero claims that the district court released 19 pages of therapy records to him. A party's brief may not expand the evidentiary record, nor may it

expand this court's transcript. *Aflague v. Luger*, 8 Neb. App. 150, 589 N.W.2d 177 (1999). Because our record contains no information following the court's order requiring the State to submit the records for in-camera review, we are unable to determine whether Santos-Romero's rights were violated. It is incumbent upon an appellant to supply a record which supports his or her appeal. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). We therefore reject this argument.

Santos-Romero argues that the process set forth in *State v. Trammell, supra*, is fundamentally unfair to a defendant because there is no oversight of the district court's action in determining what, if any, records should be released to a defendant. He states that it is unknown to a defendant, and will be unknown to an appellate court, what records a district court receives and reviews during an in-camera inspection and whether all relevant material was provided to the defendant. To the extent Santos-Romero attacks the *Trammell* procedure, we reject his argument.

The procedure set forth in *Trammell* is derived from *State v. Esposito*, 192 Conn. 166, 471 A.2d 949 (1984). In *Esposito*, the Connecticut Supreme Court detailed the process to be used for review of a witness' privileged records. It explained:

> If, however, the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. *If the consent is limited to an in camera*

*inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is to be made available for inspection on appellate review.* If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having [the] testimony stricken in the event of refusal.

*Id*. at 179-80, 471 A.2d at 956 (emphasis supplied).

In adopting the Connecticut Supreme Court's procedure, the Nebraska Supreme Court omitted the italicized language, using ellipses, presumably because the issue presented involved the initial procedure of producing the records, not what should occur if some or all of the records were withheld. Regardless, the procedure set forth in *Trammell* does not address, and therefore does not prevent, a defendant's request that the records reviewed be sealed and included as part of an appellate record. In fact, *State v. Esposito, supra*, anticipates such action. Accordingly, we cannot find that the procedure set forth in *Trammell* is fundamentally unfair to defendants, as argued by Santos-Romero.

*Ineffective Assistance of Counsel.*

Santos-Romero assigns that his trial counsel was ineffective in "failing to investigate the case and in limiting [his] defense." In the argument section of his brief, he expounds on these claims, asserting that his trial counsel was ineffective in failing to investigate the case because she never sought to depose C.G.'s mother or even speak to her prior to trial and in limiting his defense because trial counsel filed a pretrial motion in limine seeking to exclude statements C.G.'s mother made to law enforcement that she had no reason to suspect Santos-Romero of these allegations and that sometimes he and C.G. did not get along because he was very strict with her.

[4] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege

deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The Supreme Court has found that an error assigning that trial counsel was ineffective in "'fail[ing] to adequately investigate [the defendant's] defenses'" lacked the specificity we demand on direct appeal. *Id*. at 935, 926 N.W.2d at 86. Likewise, the Supreme Court recently held that an error assigning that trial counsel was ineffective in "'Failing to Investigate the Case Fully'" lacked the requisite specificity as to what component of investigation counsel was allegedly deficient in failing to conduct. *State v. Wood*, 310 Neb. 391, 436, 966 N.W.2d 825, 858 (2021).

We find the same is true here. Santos-Romero's assignment of error does not specifically identify which aspects of the case trial counsel failed to investigate or in what manner she limited his defense. We therefore do not address his claims.

## CONCLUSION

We find no error in the procedures the district court followed regarding jury sequestration or reviewing and releasing mental health records, and we do not address the ineffective assistance of counsel claims raised here. Santos-Romero's convictions and sentences are therefore affirmed.

Affirmed.