Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2026 01:07 AM CDT

State of Nebraska, appellee, v. Christian X.
Hernandez, appellant.

___ N.W.3d ___

Filed March 31, 2026.    No. A-24-681.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Motions for Mistrial: Appeal and Error.** An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion.

5. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

6. **Sentences: Evidence: Appeal and Error.** Absent an abuse of discretion, an appellate court will not disturb a trial court's rulings as to the source and type of evidence and information that may be used in determining the kind and extent of punishment to be imposed.

7. **Sentences: Appeal and Error.** Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits.

8. **Evidence: Words and Phrases.** To be relevant, evidence must be probative and material. Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence. A fact is material if it is of consequence to the determination of the case.

9. **Motions for Mistrial: Juries: Appeal and Error.** Where a motion for mistrial is premised on adducing evidence that violates an order in limine, an appellate court will consider that the trial judge was in the best position to assess the potential impact of such evidence on the jury.

10. **Sentences.** A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

11. ____. Where a defendant was under the age of 18 when he or she committed a Class IA felony, Neb. Rev. Stat. § 28-105.02 (Reissue 2016) dictates that the sentencing judge must also consider mitigating factors, such as the defendant's (1) age at the time of the offense, (2) impetuosity, (3) family and community environment, and (4) ability to appreciate risks and consequences of the conduct, as well as (5) the outcome of a comprehensive mental health evaluation of the defendant conducted by an adolescent mental health professional licensed in Nebraska.

Appeal from the District Court for Douglas County: Jeffrey J. Lux, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Abbi R. Romshek for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

Riedmann, Chief Judge, and Pirtle and Freeman, Judges.

Riedmann, Chief Judge.

## I. INTRODUCTION

This is Christian X. Hernandez' direct appeal from his convictions and sentencing in the district court for Douglas County following a jury trial. Upon review, we affirm the judgment of the district court.

## II. BACKGROUND

Hernandez was charged with first degree murder, discharge of a firearm at an occupied motor vehicle, and two counts of use of a deadly weapon to commit a felony. Following a jury trial, Hernandez was convicted of all charges. Numerous witnesses, including multiple law enforcement officers and forensic technicians, testified at trial. We recount only the evidence that is necessary to resolve Hernandez' assigned errors.

Hernandez and Jorge Campos had been in the same friend group, but at some point, the group split into two separate factions. Hernandez and Campos were no longer in the same group. In August or September 2021, one of Campos' friends was in a fight with Hernandez at school, and a video of the fight circulated on social media. Following this, there were smaller incidents and arguments between the two groups, but nothing very serious.

On December 22, 2021, Campos was driving and his 14-year-old stepsister, Isabella Santiago, was in the back seat. His friend Maximilliano Lopez (Maximilliano) was in the front passenger seat. Campos was driving Maximilliano home, and around 9 p.m., Campos drove through Maximilliano's neighborhood. Campos was playing music loudly on his car's radio and was honking the car's horn. Samuel Lopez (Samuel) was driving in the same neighborhood. The passengers in Samuel's car included Hernandez in the back passenger seat and Jose Perez-Carrisales in the front passenger seat.

Samuel saw Campos' car drive by and someone in Samuel's car told him to "'go, go, go.'" Samuel started following Campos' car. Hernandez passed Samuel a gun, and Samuel passed the gun back to Hernandez, saying it was not for him. Campos stopped at a stop sign, and Samuel pulled his car next to Campos' car. Ten shots were fired from Samuel's car, and Campos looked over and saw Hernandez in the other car. Maximilliano saw Hernandez shooting. Samuel turned left, and Campos drove straight ahead. Santiago had been shot, so Campos drove to a nearby fire station to obtain medical

assistance. Santiago died as a result of a gunshot wound to her back. A projectile was recovered from her body. Bullet defects were observed on Campos' car, and projectiles were recovered from the inside of the car. Campos, Maximilliano, and Samuel all identified Hernandez as the shooter.

Following the shooting, as part of their investigation, law enforcement searched the home of Ivan Morelos-Pasillas, who was an associate of Hernandez. Morelos-Pasillas was on probation, and his residence could be searched by his juvenile probation officer pursuant to his probationary status. A firearm was recovered during the search, but it was later determined not to be the firearm used in the shooting. The firearm was received into evidence at trial. Police later located Samuel's car and collected DNA swabs from various parts of both the interior and exterior of the car, but Hernandez was not included as a contributor to any of the DNA tested.

The jury convicted Hernandez of all four counts, and the district court ordered a presentence investigation report (PSI). For his conviction of first degree murder, a Class IA felony, Hernandez was sentenced to 60 to 80 years' imprisonment. For his conviction of discharging a firearm at an occupied motor vehicle, a Class ID felony, Hernandez received a sentence of 20 to 40 years' imprisonment. For each conviction of use of a deadly weapon to commit a felony, a Class IC felony, Hernandez received a sentence of 10 to 20 years' imprisonment. The sentences were ordered to be served consecutively. Hernandez was given credit for 957 days served.

Additional facts will be discussed below as necessary.

### III. ASSIGNMENTS OF ERROR

Hernandez assigns, restated, that the district court abused its discretion by (1) overruling his objection to, and receiving into evidence, the firearm recovered from Morelos-Pasillas' home; (2) overruling his objection and motion for mistrial to testimony about Morelos-Pasillas' firearm conviction and probationary status; (3) sustaining the State's objection to

Perez-Carrisales' mental health records and testimony by his treating physician; and (4) sustaining the State's objection to testimony regarding Perez-Carrisales' consciousness of guilt. He assigns that (5) the evidence was insufficient to support his convictions. Hernandez also assigns that the district court abused its discretion in (6) receiving victim impact statements that contained inadmissible characterizations and opinions and (7) in imposing excessive sentences.

## IV. STANDARD OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[3] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Geller*, 318 Neb. 441, 16 N.W.3d 365 (2025).

[4] An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion. *Vazquez, supra.*

[5] In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

[6] Absent an abuse of discretion, an appellate court will not disturb a trial court's rulings as to the source and type of evidence and information that may be used in determining

the kind and extent of punishment to be imposed. *State v. Gleaton*, 316 Neb. 114, 3 N.W.3d 334 (2024).

[7] Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025).

## V. ANALYSIS

### 1. Firearm

[8] Hernandez assigns that the district court erred in over-ruling his objection to, and receiving into evidence, the firearm recovered from Morelos-Pasillas' home. We find that the exhibit was relevant and that the district court did not abuse its discretion in receiving it into evidence. To be relevant, evidence must be probative and material. *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025). Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence. *Id*. A fact is material if it is of consequence to the determination of the case. *Id*.

The firearm located during the search of Morelos-Pasillas' home was introduced into evidence as an exhibit and received over Hernandez' objection. Hernandez argues the firearm itself was not relevant because it was not the weapon used in the shooting and photographs of it had already been received into evidence. The State does not agree that it was error to receive the firearm into evidence but argues that the claim necessarily fails because Hernandez concedes the firearm was cumulative to other evidence and any error in its admittance would be harmless.

On appeal, Hernandez argues that the only purpose for the firearm was to show his connection to individuals who unlawfully possessed handguns. We disagree and find the firearm was relevant to counter Hernandez' theory of the case. Hernandez' position was that there was an alternative suspect and that questions asked of some witnesses implied the

witnesses were lying and were encouraged by law enforcement to name Hernandez as the suspect. An investigator was questioned about an interview with Maximilliano in which the investigator stated that they would "need everybody on the same page." Samuel was asked on cross-examination about his "changed" story. During closing arguments, trial counsel noted that detectives interviewed various witnesses and "continually encouraged them to come up with answers."

The State was permitted to counter Hernandez' theory of the case. It did this in part by putting forth evidence that the police had conducted a thorough investigation regarding alternative suspects. This included providing the jury with information, and supporting exhibits, regarding the firearm found during the search of Morelos-Pasillas' home. Although the firearm was ultimately determined not to have been the weapon used in the shooting, the police did investigate and examine the evidence found, including the firearm.

Hernandez argues that any probative value of the firearm is substantially outweighed by the danger of unfair prejudice. We acknowledge that receipt of the firearm itself may have had a more jarring effect on the jurors, but even without the firearm in evidence, there was evidence before the jury that Hernandez and Morelos-Pasillas were associated with one another. And a photograph of the firearm that was found during a search of Morelos-Pasillas' home was in evidence. The probative value of the firearm itself being received into evidence was not outweighed by the danger of unfair prejudice. The district court did not abuse its discretion in receiving it into evidence. This assignment of error fails.

### 2. MORELOS-PASILLAS' FIREARM CONVICTION

Hernandez assigns that the district court erred in overruling his objection and motion for mistrial following testimony about Morelos-Pasillas' probationary status as a result of a

firearm conviction. We find that the district court did not err in this regard.

### (a) Additional Background

Prior to trial, the State filed a motion in limine requesting in part that Hernandez be precluded from mentioning any State witness' past or pending juvenile court proceedings, past arrests not resulting in convictions for felonies involving dishonesty or false statement, or court proceedings where no plea agreement is in place. The motion in limine was granted.

During trial, an investigator testified that Morelos-Pasillas was an associate of Hernandez and that Morelos-Pasillas was on probation for a firearm conviction. Hernandez moved to strike the answer that Morelos-Pasillas was on probation for a firearm conviction and moved for a mistrial. He argued that there was no relevance to the information regarding the firearm conviction other than to "dirty" Hernandez and that the response violated the court's order on the State's motion in limine regarding firearm convictions.

The district court noted that there had been previous testimony that a firearm had been found during a probation search at Morelos-Pasillas' home. Hernandez argued that the conviction for a firearm charge was new information. The district court overruled the objection and the motion for mistrial.

### (b) Analysis

Hernandez argues the evidence regarding Morelos-Pasillas' firearm conviction was not relevant and that the district court overruled his objection due to a mistaken belief that the information had already been presented. When overruling the objection, the district court noted that much of the information had already been introduced into evidence. The district court noted that "based off the evidence that's already come in, it covers almost all of that." The district court was aware that not all the information the investigator testified to had been admitted into evidence, but much of it already had. The only new information was that Morelos-Pasillas' probation

was due to a firearm conviction. That information explained why, in the words of the investigator, "we believed it to be a good lead to follow."

On appeal, Hernandez argues the ruling allowed additional irrelevant testimony of an associate who had a firearm conviction. But the jury was presented with evidence that Hernandez associated with Morelos-Pasillas, that Morelos-Pasillas was on probation, and that during a search of his home a firearm was found. The jury was aware that Hernandez associated with someone who possessed firearms, and the firearm conviction explained law enforcement's decision to search Morelos-Pasillas' home. The district court did not abuse its discretion in overruling Hernandez' objection to this testimony.

[9] Hernandez argues the district court erred in overruling his motion for mistrial because the court's order on the State's motion in limine prohibited the introduction of evidence regarding past juvenile court proceedings. Where a motion for mistrial is premised on adducing evidence that violates an order in limine, an appellate court will consider that the trial judge was in the best position to assess the potential impact of such evidence on the jury. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025).

In *Vasquez, supra*, the Nebraska Supreme Court determined that the district court had not erred in overruling a motion for mistrial based on an order in limine prohibiting the introduction of certain evidence. It noted that although the evidence that had been introduced was a "technical violation of the court's order in limine," it could not conclude that it was of such a nature that it actually prejudiced the defendant. *Id*. at 192, 21 N.W.3d at 642.

Here, as discussed above, the jury was already aware Hernandez associated with someone who possessed firearms. It was also aware that Morelos-Pasillas was on juvenile probation. We cannot say the additional evidence that Morelos-Pasillas was on probation for a firearm conviction was of such a nature to actually prejudice Hernandez.

The district court did not abuse its discretion in overruling Hernandez' motion for mistrial based on a violation of the order in limine. As stated above, the district court did not abuse its discretion in overruling Hernandez' objection to this same testimony. Because the district court did not abuse its discretion in overruling Hernandez' objection to the testimony that Morelos-Pasillas was on probation for a firearm-related conviction, it did not abuse its discretion in denying Hernandez' motion for mistrial due to the receipt of this information. This assignment of error fails.

### 3. Mental Health Records

Hernandez assigns that the district court erred in sustaining the State's objection to Perez-Carrisales' mental health records and testimony by his treating physician. We find the records were not relevant to Hernandez' alternative suspect theory, and the district court did not err in its decision.

### (a) Additional Background

Prior to trial, Hernandez filed a motion to examine Perez-Carrisales' medical records, pursuant to *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989). The district court granted the request, reviewed the records, and determined that certain records could be relevant to the case and made them available for the parties to review. At trial, Hernandez wished to have one of Perez-Carrisales' treating physicians testify regarding statements Perez-Carrisales made as shown in his medical records. The State objected based on relevancy, foundation, and hearsay.

The district court sustained the State's objections on the basis that many of the statements it believed Hernandez wished to use were not relevant, that some were hearsay or double hearsay, and that any statements made for the purpose of diagnosis and treatment were not competent to show the truth of the matter asserted. It acknowledged that in some statements Perez-Carrisales mentioned this specific shooting, but the statements were not helpful to the defense.

Hernandez made an offer of proof at trial, setting forth statements in Perez-Carrisales' medical records that Hernandez argued supported his theory that Perez-Carrisales was an alternative suspect. The statements included that Perez-Carrisales had been involved in murders and driveby shootings and that he had violent thoughts toward police, heard voices that had told him to kill police, disbelieved in death, and liked guns. He stated that he had to attend court related to the murder of a 14-year-old girl, that he was in the car when the shots were fired, and that he told the shooter not to do it. Perez-Carrisales made statements that he was lustful to kill, that he would kill himself before going to prison, and that he practiced what he would say to the judge at his hearing.

### (b) Analysis

Hernandez argues the statements were relevant for his theory that Perez-Carrisales was an alternative suspect. He argues the statements, in combination with the testimony that Perez-Carrisales was sitting in the front passenger seat and the testimony from Campos that the shots came from the front passenger window, make it less likely that Hernandez was the shooter and more likely that Perez-Carrisales was the shooter. Hernandez argues that the statements fell within the medical diagnosis and treatment exception to the hearsay rule and could be used for the truth of the matter asserted.

Although we agree the district court erred in stating that because the statements were made for purposes of medical diagnosis and treatment they could not be used for the truth of the matter asserted, we nonetheless agree they were properly excluded because they were not relevant. Neb. Rev. Stat. § 27-402 (Reissue 2016) provides in part that evidence which is not relevant is not admissible. To be relevant, evidence must be probative and material. *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025). Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence. *Id*. A fact is

material if it is of consequence to the determination of the case. *Id*. As the evidence at issue here was not relevant, it was not admissible.

The statements Hernandez references in the medical records did not support the inclusion of Perez-Carrisales as an alternative suspect. Perez-Carrisales did make statements in 2023 that he had been involved in murders and driveby shootings and that he had violent thoughts toward police officers. However, the statements Perez-Carrisales made that related to the shooting at issue were that he was present, but not the shooter, and that he told the shooter not to do it.

Even when viewed in the context of the conflicting testimony regarding where Perez-Carrisales was seated in the car, the statements do not support the alternative suspect theory. At trial, Campos testified that the shots were fired from the area of the front passenger seat and stated that Hernandez was the shooter. Samuel testified that Perez-Carrisales sat in the front passenger seat, but he also stated that Hernandez was the shooter. Although there was conflicting testimony regarding where Perez-Carrisales and Hernandez were seated in the car, there was no conflicting testimony as to whether Hernandez was the shooter. Perez-Carrisales' statements to his medical provider that he was present at the shooting and told the shooter not to do it support that Perez-Carrisales was in the car, but was not the shooter. The statements Hernandez sought to introduce did not tend to make it more likely that Perez-Carrisales was the shooter, rather than Hernandez. As such, they were not relevant and were not admissible.

Even if we were to agree with Hernandez that some of the statements may have been relevant to his theory that Perez-Carrisales was an alternative suspect, we cannot say the district court abused its discretion in its determination to sustain the State's objection to this evidence. Statements made by Perez-Carrisales that he was a cold-blooded killer, would not get caught, liked guns, and did not desire to follow laws may have been relevant. However, a trial court's

determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016).

Here, the reason for Perez-Carrisales' hospitalization was for a mental health evaluation for court committal following statements of suicidal and homicidal ideation. Notes describing providers' encounters with him in an emergency department stated that Perez-Carrisales "appear[ed] acutely psychotic." A later treatment note described Perez-Carrisales' behavior as "bizarre." Another listed his diagnosis/assessment as "[p]sychosis, unspecified." Viewing the possibly relevant statements in the context in which they were made, along with the other statements that specifically related to the shooting—for example, denying that he was the shooter—we cannot say the district court abused its discretion in its determination to sustain the State's objection.

### 4. Social Media Post

Hernandez assigns that the district court erred in sustaining the State's objection to testimony regarding Perez-Carrisales' consciousness of guilt. We find that the evidence was not relevant to show consciousness of guilt and that the district court did not abuse its discretion in sustaining the State's objection.

### (a) Additional Background

At trial, Hernandez questioned a police officer regarding a social media post Perez-Carrisales made on October 16, 2023. The post showed a picture of a courtroom, with the words "Any body [sic] got a free gun for me" superimposed over the picture. Hernandez argued the post showed Perez-Carrisales' consciousness of guilt. The State objected, arguing that the post came from a proceeding in the courtroom related to Perez-Carrisales' availability for a deposition and was not consciousness of guilt for the December 2021 shooting.

The district court recalled being made aware of the post when it was originally created and understood the post to be a potential threat against the district court and not related to

the case. Hernandez acknowledged the post was made on the day Perez-Carrisales had been ordered to appear in court to be appointed counsel and to be ordered to sit for a deposition in this case. He argued that the posting was made when Perez-Carrisales had been ordered to appear for a matter related to this case and was a threat. The district court sustained the State's objection to the social media post, stating it did not see how it was connected to consciousness of guilt for the crimes charged.

### (b) Analysis

Hernandez' theory of the case was that Perez-Carrisales was an alternative suspect. On appeal, Hernandez argues that the social media post was relevant because "[a]fter appearing in court, [Perez-Carrisales] made a threat involving a firearm and posted it online. When raising an alternative suspect theory, any threats made by the alternative suspect that are violent and pertinent to a case are relevant to the defense's theory." Brief for appellant at 30. Section 27-402 provides in part that evidence which is not relevant is not admissible. To be relevant, evidence must be probative and material. *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025). Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence. *Id*. A fact is material if it is of consequence to the determination of the case. *Id*.

The post at issue was made after Perez-Carrisales had been ordered to appear in court and to sit for a deposition in this case. The district court understood the post to be a threat to the district court. We agree with the district court's interpretation.

When viewing the post in the context in which it was made, we determine it does not show consciousness of guilt as to the shooting. The threat appeared to be based on Perez-Carrisales' anger at being forced to appear in court, not about the specific case for which he was forced to appear.

We cannot see how this post makes it more probable that Perez-Carrisales was the shooter, rather than Hernandez. As such, it was not relevant. The district court did not abuse its discretion in sustaining the State's objection to the social media post. This assignment of error fails.

### 5. SUFFICIENCY OF EVIDENCE

Hernandez assigns that the evidence was insufficient to support his convictions. We disagree. In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Adams*, 320 Neb. 316, 27 N.W.3d 23 (2025).

The State was required to put forth sufficient evidence such that a rational trier of fact could conclude that Hernandez purposefully and with premeditated malice killed Santiago, that he unlawfully and intentionally discharged a firearm at an occupied motor vehicle, and that he used a firearm in his commissions of those offenses. The evidence established that Hernandez was riding in a car driven by Samuel when Campos drove by them. Hernandez gave Samuel a gun, but Samuel gave it back to Hernandez. When Samuel's car was next to Campos' car, Hernandez fired 10 shots toward Campos' car. One of the bullets struck Santiago, who died as a result. Bullet defects were observed on Campos' car, and projectiles were recovered from the inside of the car. The evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to conclude that Hernandez, purposefully and with premeditated malice, killed Santiago, that he unlawfully and intentionally discharged a firearm at an occupied vehicle, and that he used a firearm to commit both crimes.

In support of his argument, Hernandez points to conflicting testimony regarding where the shooter was seated and the lack

of DNA evidence placing him in the vehicle. Although Samuel recalled Hernandez was seated in the back passenger seat, Campos remembered Hernandez sitting in the front passenger seat. When speaking to police immediately after the shooting, Maximilliano stated Hernandez was in the front passenger seat, but at trial testified that Hernandez was in the back passenger seat. Although witness testimony was inconsistent regarding where Hernandez was seated, it was consistent that he was the shooter. The absence of Hernandez' DNA in the car does not make his presence in it on the night of the shooting a factual impossibility. Hernandez is asking this court to resolve conflicts in the evidence and pass on witness credibility, but resolving these matters was for the jury. On appeal, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, as such matters were for the jury. See *Adams, supra*. Viewing the evidence in the light most favorable to the State, we determine the evidence was sufficient to support the convictions. This assignment of error fails.

### 6. Victim Impact Letters

Hernandez assigns that the district court abused its discretion in receiving victim impact statements that contained inadmissible characterizations and opinions. We find no abuse of discretion. Pursuant to Neb. Rev. Stat. § 81-1848 (Reissue 2024), a victim may make a written or oral impact statement to be used in the preparation of the PSI. Hernandez argues that case law provides limitations on a victim's family members' characterization and opinion about the crime, the defendant, or the appropriate sentence and that such statements may not be received.

The Supreme Court addressed a similar argument in *State v. Gleaton*, 316 Neb. 114, 3 N.W.3d 334 (2024). In *Gleaton*, the court noted that although it had held in some capital cases that victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence

may not be received into evidence, the defendant had pointed to no authority that this same limitation applied to noncapital cases. The court noted that even if the sentencing court had been precluded from considering such information, it had expressly stated it would not consider it, which had been held in capital cases not to violate the Eighth Amendment. See *Gleaton, supra*.

At a hearing prior to sentencing, Hernandez moved to exclude many of the victim impact statements from consideration. The court ruled that it would accept the statements into evidence but that it would not consider any inappropriate characterizations or opinions. At sentencing, the district court stated it would give the victim impact statements the weight and credibility they were due and would disregard any portions not supported by the record. It stated it would not consider inappropriate characterizations and opinions about Hernandez, the crimes, or the appropriate sentences that were contained within the statements. Later in the hearing, the district court again stated that there were certain portions of the victim impact statements that it had to disregard. Here, as in *Gleaton, supra*, it is clear the district court did not consider any of the challenged statements that were included in the victim impact statements. We find no abuse of discretion.

### 7. Excessive Sentences

Hernandez assigns that the district court abused its discretion in imposing excessive sentences. We find no abuse of discretion.

Hernandez was convicted of first degree murder, a Class IA felony, which, due to his age, was punishable by a maximum sentence of not greater than life imprisonment and a minimum sentence of not less than 40 years' imprisonment. See Neb. Rev. Stat. § 28-105.02 (Reissue 2016). For his conviction of a Class IA felony, Hernandez received a sentence of 60 to 80 years' imprisonment. Hernandez was convicted of discharging a firearm at an occupied motor vehicle, a

Class ID felony. This is punishable by a maximum sentence of 50 years' imprisonment and a mandatory minimum sentence of 3 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). For his conviction of a Class ID felony, Hernandez received a sentence of 20 to 40 years' imprisonment. Hernandez was also convicted of two counts of use of a deadly weapon to commit a felony, a Class IC felony. This is punishable by a maximum sentence of 50 years' imprisonment and a mandatory minimum sentence of 5 years' imprisonment. See *id*. For each conviction of a Class IC felony, Hernandez received a sentence of 10 to 20 years' imprisonment. All of Hernandez' sentences are within statutory limits. As such, we review for an abuse of discretion.

[10] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025). A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

[11] Where a defendant was under the age of 18 when he or she committed a Class IA felony, § 28-105.02 dictates that the sentencing judge must also consider mitigating factors, such as the defendant's (1) age at the time of the offense, (2) impetuosity, (3) family and community environment, and (4) ability to appreciate risks and consequences of the conduct, as well as (5) the outcome of a comprehensive mental health evaluation of the defendant conducted by an adolescent mental health professional licensed in Nebraska. *State v. Ramirez*, 314 Neb. 419, 990 N.W.2d 550 (2023).

Hernandez was 16 years old when he committed the crimes at issue. The PSI shows that Hernandez was 18 years old at the time of sentencing and had graduated from high school. His score on the level of service case/management inventory was 25, placing him in the high risk range. The PSI noted that during Hernandez' incarceration throughout this case, he had received 14 disciplinary lockdown penalties. At the time of the PSI interview, Hernandez was in administrative segregation, in part for threatening an officer. The PSI noted that although the charges here were very serious, this was the first time that Hernandez had been convicted or adjudicated of a crime. The PSI included an evaluation that had been completed when Hernandez had requested his case be transferred to juvenile court. The evaluation contained detailed information on Hernandez' life, his developmental maturity, and his treatment amenability.

Hernandez' counsel submitted a sentencing memorandum to the court in which she highlighted the case law surrounding sentencing for individuals who were juveniles when they committed crimes. The memorandum addressed brain development in juveniles and how it impacted their ability to consider future consequences, as well as the development that can occur during teenage years and into an individual's early twenties. Hernandez' counsel also discussed much of this same information when addressing the district court at sentencing.

The district court reviewed the PSI prior to sentencing, along with the sentencing memorandum. When explaining the elements it took into account when fashioning the sentences, the district court noted that the murder conviction involved the senseless murder of another juvenile and that the discharge of a firearm conviction involved two other victims. Hernandez argues that the district court's statements do not make it clear that it considered the relevant sentencing factors, highlighting different factors it did not discuss. However, a sentencing court is not required to articulate on the record that it has considered each sentencing factor, nor to

make specific findings as to the facts pertaining to the factors or the weight given them. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

The sentences imposed are within the statutory limits. The district court considered the appropriate factors when fashioning the sentences. Hernandez has failed to show an abuse of discretion.

## VI. CONCLUSION

We find the district court did not abuse its discretion in its evidentiary rulings. We further determine that the evidence was sufficient to support the convictions, that the district court did not abuse its discretion in accepting the victim impact statements for purposes of sentencing, and that the sentences imposed were not an abuse of discretion. We affirm the judgment of the district court.

AFFIRMED.